**Mark C. KADETSKY, Plaintiff,**

v.

**EGG HARBOR TOWNSHIP BOARD OF EDUCATION, et al., Defendants.**

**Civil Action No. 99–842.**

United States District Court, D. New Jersey.

Jan. 20, 2000.

Richard T. Fauntleroy, Richard T. Fauntleroy, P.C., Northfield, NJ, for Plaintiff, Mark C. Kadetsky.

Joseph F. Betley, Capehart & Scatchard, P.A., Mount Laurel, NJ, for Defendants, Egg Harbor Tp. Bd. of Educ., Howard Minnichbach, Ralph A. Ridolfino, and Dr. Jean Levine.

## OPINION

ORLOFSKY, District Judge.

This employment law case presents this Court with the opportunity to explore the expanding contours of a public employee's First Amendment rights and the protection provided by the New Jersey Constitution to an employee's reputation. In addition, I must consider the employee's reputational interests in the context of New Jersey's Conscientious Employee Protection Act and the common law tort of defamation. Plaintiff, Mark C. Kadetsky ("Kadetsky"), a tenured high school band director at Egg Harbor Township High School, brought this action, pursuant to 42 U.S.C. § 1983,[1] alleging that the actions of the Egg Harbor Township Board of Education ("the Board") and several of its employees constituted retaliatory conduct in violation of Kadetsky's First Amendment right of free speech and right to petition as well as depriving him of due process of law under the Fourteenth Amendment. Additionally, Kadetsky asserts pendent state claims under the New Jersey Constitution, New Jersey's Conscientious Employee Protection Act (CEPA) and common law claims of defamation and invasion of privacy. Defendants move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Kadetsky's Complaint for failure to state a claim upon which relief can be granted. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1343(a)[2] and 1367(a).[3] For the reasons set forth below, I shall grant in part and deny in part the Defendants' motion to dismiss.

## I. BACKGROUND

The facts of this case are many and the following summary represents only what this Court considers relevant to the disposition of the pending motion. Kadetsky began his teaching career as the Egg Harbor Township High School band director during the 1995–96 school year and continued to receive contracts for each successive year until 1998. *See* Complaint at ¶¶ 10, 12. According to New Jersey law, Kadetsky would become a tenured teacher

1. Section 1983 provides that:

 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

 42 U.S.C.A. § 1983 (West Supp.1999).

2. 28 U.S.C. § 1343 provides, in relevant part: The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

 (1) to recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42;

 (2) To recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and power to prevent;

 (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom, or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

 (4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

 28 U.S.C. § 1343(a) (1994).

3. Section 1367 provides, in relevant part:

 Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution....

 28 U.S.C. § 1367(a) (1994).

if employed by the Board for the 1998–99 school year. *See* N.J.S.A. 18A:28–5; *see also* Complaint at ¶ 11. Kadetsky contends that beginning in January, 1998, the Principal of Egg Harbor Township High School, Ralph A. Ridolfino ("Ridolfino"), and Kadetsky's immediate supervisor, Music Supervisor Dr. Jean Levine ("Levine"), set out to create a false record of insubordination and poor work performance to prevent Kadetsky from obtaining tenure in the Egg Harbor Township School District. *See* Complaint at ¶ 12.

The Complaint encompasses four groupings of pertinent facts. First, Kadetsky alleges that in or around May, 1996, while Defendant Ralph A. Ridolfino was the Assistant Principal of Egg Harbor Township High School, Kadetsky reported him to the then-Principal of the school for conduct in violation of school policy. *See id.* at ¶ 26. Specifically, Kadetsky reported that in Ridolfino's capacity as a chaperone on school band trips, Ridolfino "had a bathtub full of beer and consumed alcoholic beverages." *Id.* Following Kadetsky's report of the incident, the school administration determined that Ridolfino would no longer be permitted to serve as a chaperone on Kadetsky's band trips. *See id.* Upon Ridolfino's 1997 appointment to the position of Principal of the High School, Kadetsky alleges that Ridolfino confronted him, stating that Ridolfino did not consider Kadetsky to be a "team player and that he was going to fire [Kadetsky]." *Id.* at ¶ 29. Kadetsky alleges that Ridolfino "made it clear that this threat was a result of the decision reached by the former Principal as a result of the complaints of [Kadetsky]." *Id.*

It is against this backdrop that Kadetsky's second major set of allegations arises. According to the Complaint, in or around January, 1998, Ridolfino and Levine began placing groundless reprimand letters in Kadetsky's personnel file and deprived him of his rights under the collective bargaining agreement to contest the letters with the aid of union representa-

tion. *See* Complaint at ¶¶ 13, 30E. On February 25, 1998, Kadetsky took an "emergency personal day" to discuss the false letters of reprimand with his union representative, only to receive another negative letter from Ridolfino for insubordination. *See id.* at ¶ 14. Kadetsky alleges that around March 9, 1998, he filed a formal grievance which requested that the negative memorandum be removed from his personnel file for failure to follow the proper procedures. *See id.* at ¶ 15. Furthermore, the Complaint alleges that between March 9 and March 19, 1998, he notified the Superintendent of Schools of the improper activities of Levine, his direct supervisor. *See id.* at ¶ 16.

This exchange culminated in Kadetsky's third wave of allegations. According to the Complaint, on March 24, 1998, Ridolfino told Kadetsky that he had received a letter ("the Letter") from the parents of a male band student which stated that Kadetsky had "wined and dined the student and had sexual relations with him on a band trip." Complaint at ¶ 17. Kadetsky alleges that in the meeting, Ridolfino threatened Kadetsky that if the band director discussed the letter, "the information might make it into the newspapers." *Id.* According to the Complaint, Ridolfino advised Kadetsky that "he would keep the information under wraps if [Kadetsky] would agree to resign" at the end of the 1997–98 school year. *Id.* Kadetsky alleges that Ridolfino himself had approached the parents of the band student, "misled them into thinking that [Kadetsky] had done something improper and coached them in preparation of the letter." *Id.* at ¶ 19. Ridolfino "carr[ied] out his threat of public humiliation" by advising administration officials of the alleged letter. *See id.* at ¶ 21.

Kadetsky also alleges that Egg Harbor Township Board of Education member Minnichbach repeated the letter's accusations to other band parents, advising them "that they should not do anything to support [Kadetsky's] efforts to keep his job." Complaint at ¶ 23. Furthermore, Minnich-

bach is alleged that have told parents that Kadetsky falsified his resume and was improperly using Egg Harbor computer equipment to develop band shows for other schools for his personal financial gain. *See id.*

Instead of remaining silent about the alleged contents of the Letter, Kadetsky spoke to other teachers and his union representative about the accusations and ignored Ridolfino's further requests to "cease and desist from making all conversations or comments with other teachers concerning his situation and placing the Administration in a bad light." Complaint at ¶ 17. In April, 1998, Kadetsky was informed that he would not receive a contract of employment for the 1998–99 school year. *See id.* at ¶¶ 18, 30G.

Kadetsky alleges that his union representative, after securing a copy of the Letter, discovered that the document contained none of the alleged charges of sexual misconduct. *See* Complaint at ¶ 22. Kadetsky sought and was awarded a hearing before the Egg Harbor Board of Education regarding the issues surrounding Kadetsky's tenure bid, including the conduct of Ridolfino and Levine. *See id.* at ¶ 32. As a result of a Board investigation, Kadetsky's personnel file was purged, Levine was removed from her position as Kadetsky's supervisor and appointed to a basic skills and elementary school music position, and Kadetsky was granted tenure after receiving a contract of employment for the 1998–99 school year. *See id.* at ¶¶ 33.

In the fourth and final series of allegations embodied in the Complaint, Kadetsky alleges that after his success with the Board of Education, Ridolfino and Levine continued to engage in harassing conduct. *See id.* at 34. For example, the Complaint alleges that Ridolfino allegedly interfered with Kadetsky's bid for the posi-

tion of High School Jazz Band Director, Kadetsky's attempt to hold a band competition at the school's football facilities, and the orchestra's performance trip to Disneyworld. *See id.* at ¶¶ 34–35, 38. Additionally, Ridolfino and Levine allegedly reduced the course classification of Kadetsky's music classes from "Honors" and "College Prep" to the standard level. *See id.* at 37. The Complaint does allege, however, that Kadetsky obtained the Jazz Band Director position and that the classes were restored to their original designations. See id. at ¶¶ 34, 37. Moreover, the Complaint does not indicate that there were any disruptions to the band competition. *See id.* at ¶ 38.

Kadetsky also alleges that Minnichbach and Levine defamed him through statements made to his new supervisor, Jay Kearns. According to the Complaint, Minnichbach "informed the Supervisor that if he (Minnichbach) had his way on the Board of Education, [Kadetsky] would not be working with the children of the Township because [Kadetsky] was unfit." Complaint at ¶ 36. Levine is alleged to have added that Kadetsky "would let 'any scum and derelict into the Band to boost his power base.'" *Id.* Levine is also alleged to have falsely accused Kadetsky of mishandling marching band funds and illegally requiring all students to sign up for marching band. *See id.* at ¶ 38.

From the outset, this Court has struggled to interpret the myriad of possible claims raised by the lengthy Complaint. In his brief, Kadetsky contends that the Complaint raises the following claims: (1) First Amendment retaliation pursuant to 42 U.S.C. § 1983 (Count I); (2) deprivation of his liberty without due process in violation of the Fourteenth Amendment (Count I) and the New Jersey Constitution (Count V); [4] (3) a violation of New Jersey's

---

4. In one line of his brief, Kadetsky contends that Count V involves a claim for "invasion of privacy under the New Jersey Constitution...." Pl.'s Br. at 26. Not only does

Kadetsky fail to articulate, or even allude to, how this right was violated, but he argues, in another portion of his brief, that his claim under the New Jersey Constitution relates to

Conscientious Employee Protection Act (CEPA) (Count II); (4) common law defamation (Count III); and (5) common law invasion of privacy (Count IV). Considering that the Complaint is hardly a model of clarity, this Court shall adopt Kadetsky's interpretation of the Complaint and shall treat all other possible claims arising out of the Complaint as waived.[5]

## II. LEGAL STANDARD GOVERNING A MOTION TO DISMISS

"In considering a motion to dismiss under Rule 12(b)(6), the court may dismiss a complaint if it appears certain that the plaintiff cannot prove any set of facts in support of its claims which would entitle it to relief." *Mruz v. Caring, Inc.*, 39 F.Supp.2d 495, 500 (D.N.J.1999) (Orlofsky, J.) (citing *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3d Cir.1988)). "While all well-pled allegations are accepted as true and reasonable inferences are drawn in the plaintiff's favor, the Court may dismiss a complaint where, under any set of facts which could be shown to be consistent with a complaint, the plaintiff is not entitled to relief." *Id.* (citing *Gomez v. Toledo*, 446 U.S. 635, 636, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *Schrob v. Catterson*, 948 F.2d 1402, 1405 (3d Cir.1991); *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir.1990)); *see also Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Finally, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v.*

*Williams*, 490 U.S. 319, 326–27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) (noting that this procedure "streamlines litigation by dispensing with needless discovery and factfinding").

## III. DISCUSSION

### A. Retaliation Claims Pursuant to 42 U.S.C. § 1983

Kadetsky alleges that the Defendants retaliated against him for exercising his speech and petition rights under the First Amendment to the United States Constitution, in violation of 42 U.S.C. § 1983. Specifically, Kadetsky contends that in retaliation for filing a grievance with his union and sending a letter to the Superintendent, Ridolfino fabricated the Letter that charged Kadetsky with sexual misconduct. *See* Pl.'s Br. at 18. Additionally, after Kadetsky spoke out to his colleagues and union representative against the Letter's false allegations and Ridolfino's threats, Kadetsky contends that the Defendants retaliated with a pattern of harassing conduct. *See id.* at 19. In support of their motion to dismiss the Complaint for failure to state a claim upon which relief can be granted, the Defendants argue first that Kadetsky's speech was not protected, and second, that Kadetsky, a tenured teacher, suffered no adverse employment action. *See* Def.'s Br. at 23. For the reasons set forth below, I find that Kadetsky has sufficiently stated a claim under both the

a separate liberty interest involving his reputation. *Id.* at 22. Taking the competing statements together, this Court believes that Kadetsky is alleging that his supervisors' statements that he had engaged in sexual misconduct and the statements by Minnichbach that Kadetsky had falsified his resume and was engaged in professional improprieties, harmed his reputation in the community. Accordingly, this Court will interpret Count V as alleging that the injury to his reputation violated his due process rights under the State Constitution.

**5.** For example, Kadetsky explicitly states that he has not pled the following claims in his Complaint: (1) "claims regarding breach of

the collective bargaining agreement;" (2) negligent infliction of emotional distress; (3) intentional infliction of emotional distress; and (4) tortious interference with his contractual relationship. *See* Pl.'s Br. at 31. Accordingly, this Court finds that Kadetsky has waived all such claims, as well as any others outside the scope of Kadetsky's interpretation of the Complaint. *See e.g.*, Complaint at Count I (casual reference to equal protection and contract claims); Count V (casual reference to N.J.S.A. Const. Art. 1, par. 18) (right to freely assemble, consult for common good, petition for redress of grievances), par. 19 (right to organize and make grievances known).

speech and petition prongs of his First Amendment retaliation claim.

### 1. General Principles of Kadetsky's Retaliation Claims

To assert a claim successfully under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person "acting under color of State law." *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *Suarez v. Camden County Bd. of Chosen Freeholders,* 972 F.Supp. 269, 274 (D.N.J.1997)(Irenas, J.). Because the Defendants have conceded, for purposes of this motion, that they were "acting under color of State law," this Court must determine whether Kadetsky has sufficiently alleged the violation of his First Amendment rights.

■ "A public employee's claim of retaliation for engaging in a protected activity is analyzed under a three-step process." *Carlino v. Gloucester City High School,* 57 F.Supp.2d 1, 31 (D.N.J.1999)(Orlofsky, J.)(quoting *Green v. Philadelphia Housing Auth.,* 105 F.3d 882, 885 (3d Cir.1997)). This well-settled tripartite "process" involves the following:

> A plaintiff must first demonstrate the activity in question was protected. Second, the plaintiff must show the protected activity was a substantial or motivating factor in the alleged retaliatory action.... Finally, defendants may defeat plaintiff's claim by demonstrating "that the same action would have been taken even in the absence of the protected activity."

*Id.* (citation omitted)(quoting *Swineford v. Snyder County,* 15 F.3d 1258, 1269 (3d Cir.1994)); *see also Anderson v. Davila,* 125 F.3d 148, 161 (3d Cir.1997).

### 2. First Amendment Retaliation: Speech as a Matter of Public Concern

In Count I of the Complaint, Kadetsky alleges that he was wrongfully retaliated against for filing a grievance and for engaging in speech, both of which he contends are protected under the First Amendment to the United States Constitution. *See* Pl.'s Br. at 18. In support of their motion to dismiss, the Defendants first argue that the grievance was not "protected speech." See Def.'s Br. at 23. Second, the Defendants contend that the statements made by Kadetsky to his teaching colleagues and to his union representative were merely of personal interest, not on a "matter of public concern," and therefore outside the scope of First Amendment protection. *See* Def.'s Br. at 23; Def.'s Reply at 6. I will address each of these arguments in turn.

### a. The Right to Petition

■ The full extent of the Defendants' argument against Kadetsky's petition claim is that he was not "engaged in protected speech under the First Amendment of . . . the United States . . . Constitution." Def.'s Br. at 23. Simply stated, this rather vague contention, however interpreted, is wholly precluded by the law of this Circuit.

In *San Filippo v. Bongiovanni,* 30 F.3d 424 (3d Cir.1994), over a vociferous dissent by Chief Judge Becker, the Third Circuit held that a public employee is protected under the Petition Clause of the First Amendment to the United States Constitution for filing a non-frivolous petition relating solely to a matter of private concern. *See id.* at 434–43. The Court considered lawsuits and grievances filed pursuant to a collective bargaining agreement as deserving of such First Amendment Constitutional protection. *See id.* at 439, n. 18, 442.

In his Complaint, Kadetsky alleges that on March 9, 1998, he "filed a formal grievance through his [union]." Complaint at ¶ 15. In light of *San Filippo*, this Court is perplexed by this ambiguous contention made on behalf of the Defendants. If, by their assertion that Kadetsky's petition is not "protected," the Defendants argue that

the grievance solely related to a matter of private concern, their argument is foreclosed by *San Filippo,* 30 F.3d at 434–43. If instead the Defendants contend that the petition was frivolous, their contention is foreclosed by the Complaint's allegations that the negative memorandum, which was the substance of the grievance, was purged from Kadetsky's personnel file following the Board of Education's investigation of Kadetsky's case. *See* Complaint at 33. Accordingly, I find no merit to the argument that Kadetsky's grievance is "unprotected" by the First Amendment and, therefore, I shall deny the Defendants' motion to dismiss the right to petition prong of Kadetsky's retaliation claim.

### b. *Freedom of Speech*

■ To be protected under the First Amendment, a public employee's speech must implicate matters of public concern, because "free and open debate" on such issues "is vital to informed decision-making by the electorate." *Pickering v. Board of Education,* 391 U.S. 563, 571–72, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). In *Carlino v. Gloucester City High School,* 57 F.Supp.2d 1 (D.N.J.1999), this Court set forth the elusive public concern standard:

> A public employee's speech involves a matter of public concern if it can be [of] political, social, or other concern to the community. Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record. When an employee [comments] upon matters only of personal interest, that public employee speaks not as a citizen upon matters of public policy.

*Id.* at 31 (quoting *Connick v. Myers,* 461 U.S. 138, 146–48, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)). Accordingly, "the speaker's motivation is relevant to the extent that it indicates whether the speaker is speaking as 'a citizen upon matters of public concern' or as a volunteer 'upon matters only of personal interest.'" *Ver-*

*sarge v. Township of Clinton New Jersey,* 984 F.2d 1359, 1364 (3d Cir.1993)(quoting *Connick,* 461 U.S. at 147, 103 S.Ct. 1684). Moreover, "motivation is 'merely one factor to be considered, but [is] not necessarily controlling, in assessing the character of [the employee's] speech.'" *Id.* (quoting *Zamboni v. Stamler,* 847 F.2d 73, 78 (3d Cir.1988) (citations omitted)). Finally, it is well-settled in the Third Circuit that "speech disclosing public officials' misfeasance is protected while speech intended to air personal grievances is not." *See Swineford v. Snyder County Pennsylvania,* 15 F.3d 1258, 1271 (3d Cir.1994).

■ In this case, while I do not hold as a matter of law that Kadetsky's speech involved a matter of public concern, I find that Kadetsky, at this stage of the litigation, has sufficiently stated a claim for protected speech under the First Amendment. According to Federal Rule of Civil Procedure 8(a), the plaintiff must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P(8)(a)(2). Indeed, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)(quoting *Conley v. Gibson,* 355 U.S. at 41, 45–46, 78 S.Ct. 99 (1957)). In this case, Kadetsky, albeit inartfully, sufficiently alleges that he engaged in speech concerning the wrongful threats made against him by his supervisor, Ridolfino. *See* Complaint at ¶ 17. Because this speech, when considered in conjunction with the form and context of Kadetsky's statements, could very likely involve a matter of public concern, this Court finds that there is an obvious set of facts which could entitle Kadetsky to relief. Accordingly, the Defendants' motion to dismiss Count I of the Complaint on the ground that it does not allege speech involving a matter of public concern is denied.

### 3. First Amendment Retaliation: Adverse Employment Action

Kadetsky alleges that after filing a grievance with his union and sending a letter to the Superintendent, he was retaliated against by the Defendants through a series of harassing instances. Kadetsky alleges that the harassment ranged from Ridolfino concocting the letter containing the false allegations of sexual misconduct to the weekly interference in Kadetsky's work environment by Ridolfino and Levine, which included the disruption of his bid for the position of Jazz Band Director, the orchestra's trip to Disneyworld, the Honors classification of his courses, and his scheduled band competition in November, 1998. *See* Complaint at ¶¶ 19, 34–38.

The Defendants contend that Kadetsky has failed to allege that any adverse employment action was taken in retaliation for Kadetsky's First Amendment activity. In support of their motion, the Defendants point out that "any allegedly improper actions were 'undone' by the Board" and that in his Complaint, Kadetsky admits that he received tenure in the Egg Harbor School District, his schedule was restored and his personnel file purged. *See* Def.'s Br. at 23.

While it is true that the majority of cases involving First Amendment retaliation involve an actual discharge, transfer, demotion or like action, the case law indicates that "retaliatory harassment could, under certain circumstances, constitute an 'adverse employment action' which is actionable under the rubric of a First Amendment cause of action." *Rodriguez v. Torres*, 60 F.Supp.2d 334, 350 (D.N.J.1999)(Cooper, J.)(relying on *Bennis v. Gable*, 823 F.2d 723 (3d Cir.1987), *Bradley v. Pittsburgh Board of Educ.*, 910 F.2d 1172 (3d Cir.1990), *Trotman v. Board of Trustees of Lincoln Univ.*, 635 F.2d 216 (3d Cir.1980), *Anderson v. Davila*, 125 F.3d 148 (3d Cir.1997)).[6] In *Rodriguez*, 60 F.Supp.2d at 334, Judge Cooper held that "a plaintiff may state a cause of action for retaliatory harassment under 42 U.S.C. § 1983 if the court determines that the alleged acts of harassment, when viewed in their totality, are likely to deter a person of ordinary firmness from the exercise of his or her First Amendment rights." *Id.* at 350 (adopting the standard for retaliatory harassment first elucidated in *Bart v. Telford*, 677 F.2d 622 (7th Cir.1982)).

 In this case, I find that the retaliatory harassment alleged in the Complaint certainly is of such magnitude as to "deter a person of ordinary firmness from the exercise of his or her First Amendment rights." *Id.* The allegations of harassment, including the allegation that Ridolfino, in essence, masterminded the false allegations of Kadetsky's sexual impropriety, are unqualifiedly egregious. This Court expresses no hesitation in finding that, through his detailed description of harassment, Kadetsky sufficiently alleged an adverse employment action for purposes of his retaliation claim.

For the reasons set forth above, I shall deny the Defendants' motion to dismiss the First Amendment portion of Count I of the Complaint.

### B. Federal and State Due Process Claims

In Count I and Count V of the Complaint, Kadetsky alleges that he was deprived of his liberty without Due Process of Law in violation of the Fourteenth Amendment to the United States Constitution and Article I, paragraph 1 of the New

---

**6.** *See also Colson v. Grohman*, 174 F.3d 498, 1999 WL 246726 (5th Cir. Apr.26, 1999); *Thaddeus–X v. Blatter*, 175 F.3d 378 (6th Cir. 1999); *Crawford–El v. Britton*, 93 F.3d 813 (D.C.Cir.1996), *rev'd on other grounds*, 523 U.S. 574, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998); *Levin v. Harleston*, 966 F.2d 85 (2d Cir.1992); *Agosto–de–Feliciano v. Aponte–Roque*, 889 F.2d 1209 (1st Cir.1989); *Pieczynski v. Duffy*, 875 F.2d 1331 (7th Cir.1989); *Bart v. Telford*, 677 F.2d 622 (7th Cir.1982); *Hutt v. Alford*, 1997 WL 158205 at *3–4 (E.D.Pa. Mar.27, 1997); *DeLeon v. Little*, 981 F.Supp. 728 (D.Conn.1997).

Jersey Constitution.[7] The Defendants argue that since Kadetsky was neither discharged or demoted, he does not have a cognizable liberty interest under either Constitution. *See* Def.'s Br. at 25. For the reasons set forth below, I find that although Kadetsky fails to state a claim for relief under the Fourteenth Amendment, he has a recognized right of relief under the New Jersey State Constitution for an alleged injury to his reputation.

In *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the United States Supreme Court held that a plaintiff's interest in reputation alone does not implicate a liberty or property interest protected by the Fourteenth Amendment's Due Process Clause. *See id.* at 712, 96 S.Ct. 1155. Instead, a due process violation arises only when the stigma to reputation is accompanied by an tangible deprivation such as the loss of present or future employment, or what is commonly known as "stigma plus." *See Robb v. City of Philadelphia*, 733 F.2d 286, 294 (3d Cir. 1984); *Shovlin v. University of Med. and Dentistry of New Jersey (UMDNJ)*, 50 F.Supp.2d 297, 316 (D.N.J.1998)(Debevoise, J.); *see also Edwards v. California Univ. of Pennsylvania*, 156 F.3d 488, 492 (3d Cir.1998)(any stigma to professor's reputation from suspension with pay did not constitute deprivation of present or future employment implicating due process liberty interest); *Kelly v. Borough of Sayreville*, 107 F.3d 1073, 1078 (3d Cir. 1997)(state defamation claim is not the equivalent of a Fourteenth Amendment violation); *Sturm v. Clark*, 835 F.2d 1009, 1012–13 (3d Cir.1987)(Supreme Court has required "both damage to reputation and the extinguishment of government employment as a predicate for due process protection").

In this case, it is clear from the face of the Complaint that Kadetsky was not discharged and, in fact, received tenure in the Egg Harbor School District. *See* Complaint at ¶ 33. Consequently, Kadetsky's claim is barred by the decisions of the Third Circuit in *Edwards, Robb,* and *Sturm*. Moreover, in light of the *Edwards* decision, any stigma that the false charges of sexual misconduct might have attached to Kadetsky's reputation does not rise to the level of the deprivation of present or future employment necessary to implicate the Fourteenth Amendment liberty interest. *See Edwards,* 156 F.3d at 492. Accordingly, I shall grant the Defendants' motion to dismiss Kadetsky's federal due process claim.

Kadetsky's State due process claim does not, however, suffer the same fate. In *Doe v. Poritz*, 142 N.J. 1, 662 A.2d 367 (1995), the New Jersey Supreme Court stated that:

> Under the State Constitution, we find protectable interests in both privacy and reputation. Our analysis differs from that under the Federal Constitution only to the extent that ***we find a protectable interest in reputation without requiring any other tangible loss.*** In interpreting the State Constitution, we look to both the federal courts and other state courts for assistance … but the ultimate responsibility for interpreting the New Jersey Constitution … is ours. In fulfilling that responsibility, we have been more willing to find State-created interests that invoke the protection of procedural due process than have our federal counterparts.

*Id.* at 104, 662 A.2d 367 (citations omitted)(emphasis added). Unlike the Fourteenth Amendment, then, Article I, paragraph 1 of the New Jersey Constitution supports Kadetsky's claim for injury to his

---

**7.** Article I of the New Jersey Constitution provides, in relevant part:

> All persons are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing, and protecting property, and of pursuing and obtaining safety and happiness.

N.J.S.A. Const. Art. I, par. 1 (West 1997).

reputation even in the absence of a tangible loss. *Id.* Accordingly, I shall deny the Defendants' motion to dismiss Kadetsky's due process claim under the New Jersey Constitution.[8]

## C. Conscientious Employee Protection Act (CEPA)

In Count II of the Complaint, Kadetsky alleges that he was subjected to an adverse employment action, in violation of New Jersey's Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19–3, after he reported that: (1) Ridolfino "had a bathtub full of beer and consumed alcoholic beverages" while acting as a chaperone on school band trips and (2) Ridolfino and Levine had engaged in wrongful conduct throughout Kadetsky's bid for tenure, including Ridolfino's actions surrounding the Letter and its charges of Kadetsky's

sexual misconduct.[9] *See* Complaint at ¶¶ 17, 26. In support of their motion to dismiss, Defendants argue that Kadetsky failed to establish both that he was subjected to an adverse employment action and that the Defendants violated a clear mandate of public policy.[10] *See* Complaint at 7–10, 12–13.

The Conscientious Employee Protection Act, N.J.S.A. 34:19–3 (West Supp.1999), New Jersey's version of a whistleblower statute, provides that:

An employer shall not take any retaliatory action against an employee because the employee does any of the following:
a. Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer or another employer, with whom there is a business relationship, that the employee reasonably believes is in viola-

8. This Court recognizes that although Kadetsky does not seem to raise the argument, plaintiffs in this District have argued, unsuccessfully, that New Jersey's recognized right in reputation provides the necessary accompanying deprivation essential to implicate the liberty interest of the Fourteenth Amendment's Due Process Clause. *See Shovlin v. University of Med. and Dentistry of New Jersey (UMDNJ)*, 50 F.Supp.2d 297, 316–17 (D.N.J. 1998). Putting to one side the fact that "[a] federal court in this jurisdiction has yet to recognize a § 1983 claim based upon the deprivation of the State-created interest in reputation under New Jersey law," I agree with Judge Debevoise's reasoning in *Shovlin* that "to recognize such a claim would be in conflict with the well-settled rule that the tort of defamation does not rise to the level of a deprivation actionable under § 1983." *See id.; see also Paul v. Davis*, 424 U.S. 693, 712, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Thus, to the extent that Kadetsky's brief raises such an issue, I find the argument foreclosed by the reasoning in *Shovlin*, 50 F.Supp.2d at 297.

9. In connection with his CEPA claim, Kadetsky contends that after Ridolfino threatened the release of the information concerning Kadetsky's alleged sexual misconduct, Kadetsky "filed a grievance and reported Ridolfino's action in a note to Ridolfino's supervisor, the Superintendent of Schools." Pl.'s Br. at 25. Although not fatal to his CEPA claim, this Court is unable to locate any support for this

proposition. It is clear from the face of the Complaint that Kadetsky filed his grievance with the union on March 9, 1998 and wrote the letter to the Superintendent "[s]ometime between March 9, 1998 and March 19, 1998." Complaint at ¶¶ 15–16. Since Kadetsky's meeting with Ridolfino concerning the charges lodged against Kadetsky did not occur until March 24, 1998, the grievance and letter to the Superintendent could not have included the allegations that Ridolfino had threatened Kadetsky. *See* Complaint at ¶ 17.

10. The Defendants also contended, pursuant to the state of New Jersey law at the time of the brief's submission, that the conduct of Ridolfino and Levine was not attributable to Kadetsky's employer, the Egg Harbor Board of Education, and therefore, that Kadetsky had failed to state a claim upon which relief can be granted. *See* Def.'s Br. at 10. After the Defendants submitted their brief, the New Jersey Supreme Court altered the CEPA landscape by holding that employees who, with a reasonable basis, complain to their employer about misconduct of coworkers are protected by the Act, even in the absence of employer complicity in the misconduct. *See Higgins v. Pascack Valley Hosp.*, 158 N.J. 404, 424–25, 730 A.2d 327 (1999). Following the *Higgins* decision, the Defendants appropriately withdrew their argument regarding the Egg Harbor Board of Education. *See* Letter from Joseph F. Betley, Capehart & Scatchard, P.A., to The Honorable Stephen M. Orlofsky (June 16, 1999).

tion of a law, or a rule or regulation promulgated pursuant to law ...; or

b. Provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into any violation of a law, or rule or regulation promulgated pursuant to law by the employer or another employer, with whom there is a business relationship ...; or

c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:

(1) is in violation of a law, or a rule or regulation promulgated pursuant to law ...;

(2) is fraudulent or criminal; or

(3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare.

█ To state a claim under CEPA, a plaintiff must show that: (1) he reasonably believed illegal conduct was occurring; (2) he disclosed or threatened to disclose the activity to a supervisory or public body; (3) retaliatory action was taken against him; and (4) there was a causal connection between the whistleblowing and the adverse employment action. *See Young v. Schering Corp.,* 275 N.J.Super. 221, 233, 645 A.2d 1238 (App.Div.1994), *aff'd,* 141 N.J. 16, 660 A.2d 1153 (1995); *see also Kolb v. Burns,* 320 N.J.Super. 467, 476, 727 A.2d 525 (App.Div.1999).

█ CEPA specifically defines "retaliatory action" as "the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment." N.J.S.A. 34:19–2(e); *see also Regan v. City of New Brunswick,* 305 N.J.Super. 342, 347, 702 A.2d 523 (App. Div.1997). From the assertions contained in Kadetsky's Complaint, it would seem that Kadetsky urges this Court to recognize that harassment, instead of a "completed action" like discharge, suspension or demotion, is an "adverse employment action" for purposes of a CEPA violation. *But cf., Keelan v. Bell Communications Research,* 289 N.J.Super. 531, 539, 674 A.2d 603 (App.Div.1996)(finding, for statute of limitations purposes, that "[t]he definition of retaliatory action speaks in terms of completed action").

I need not reach the question of what level of conduct less than "discharge, suspension or demotion" constitutes an "adverse employment action," since, in this case, Kadetsky has failed to allege that he suffers any lasting prejudice. For example, following the hearing before the Board of Education, Kadetsky's immediate supervisor, Defendant Levine, was removed to a basic skills position in an elementary school, his personnel file was purged of all incriminating matters, his schedule was restored, and he subsequently was granted tenure. *See* Complaint at ¶ 33. Moreover, Kadetsky obtained the position of High School Jazz Band Director, the classifications of his courses were restored to Honors and College Prep and there is no suggestion from which this Court can infer that the band competition at the High School's football facility was disrupted in any manner. *See* Complaint at ¶¶ 34, 37, 38. Neither the parties nor this Court have located any case law suggesting that, under the facts of this case, there is a cognizable injury within the CEPA context. Accordingly, I shall grant the Defendants' motion to dismiss Count II of the Complaint, Kadetsky's CEPA claim.

**D. Defamation**

In Count III of the Complaint, Kadetsky alleges that he was defamed by various written and oral statements of Defendants Ridolfino, Levine, and Minnichbach.[11] The

---

11. Kadetsky alleges that the following statements, made by the Defendants, are defamatory:

(1) The false employment reprimands placed in Kadetsky's personnel file by Ri-

dolfino and Levine, *see* Complaint at ¶¶ 13, 30E;

(2) Ridolfino's statements to the Superintendent, Dr. Kelpsh, and Assistant Superintendent, Dr. Heery, concerning the charges

arguments asserted in support of the Defendants' motion to dismiss are many, and are addressed below.

### 1. *Kadetsky's Defamation Claims are Not Waived By the Institution of the CEPA Claim*

The Defendants first contend that, by bringing a claim under CEPA, Kadetsky waived his state law defamation claims because such claims "arise directly out of [the] acts of retaliation . . ." and are therefore barred by CEPA's waiver provision, N.J.S.A. 34:19–8 (West Supp.1999). Def.'s Br. at 15. In opposition to the motion to dismiss, Kadetsky argues that the waiver provision is inapplicable since the defamation claims involve collateral issues requiring different proofs from those required to state a claim under CEPA. *See* Pl.'s Br. at 26.

The waiver provision in CEPA provides that:

Nothing in this act shall be deemed to diminish the rights, privileges, or remedies of any employee under any other federal or State law or regulation or under any collective bargaining agreement or employment contract; except that the institution of an action in accordance with this act shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, State law, rule or regulation or under the common law.

N.J.S.A. 34:19–8 (West Supp.1999). Claims that are substantially unrelated to the retaliatory discharge claim, or, stated differently, that "do not resemble the alleged CEPA violations and require different proofs than those needed to substantiate the CEPA claim," fall outside the purview of the waiver provision. *Young v. Schering Corp.*, 275 N.J.Super. 221, 238, 645 A.2d 1238 (App.Div.1994), aff'd. 141 N.J. 16, 31, 660 A.2d 1153 (1995). In *Young*, 141 N.J. at 16, 660 A.2d 1153, the New Jersey Supreme Court stated:

The claims of defamation, slander and malicious interference with prospective employment opportunities require different proofs than those required to sustain the CEPA claim and do not require a showing of retaliation as does a CEPA claim. Plaintiff will have to show the elements of defamation, slander and malicious interference by [Defendant] without regard to whether those actions were done in retaliation for plaintiff's [alleged whistleblowing under CEPA]. Even if plaintiff can establish that [Defendant] defamed and slandered him, or that [Defendant] interfered with his prospective employment opportunities, such conduct will not constitute a violation of CEPA.

*Id.* at 32, 660 A.2d 1153 (quoting *Young v. Schering*, 275 N.J.Super. 221, 239–40, 645 A.2d 1238 (App.Div.1994)).

In an attempt to distinguish the unambiguous language of *Young*, the Defendants point out that the substance of the

of sexual impropriety lodged against Kadetsky, *see id.* at ¶ 7;
(3) Levine's statements to Jay Kearns that:
(a) Kadetsky mishandled band funds and "illegally" required all students to sign up for marching band, *see id.* at ¶ 38;
(b) Kadetsky would let "any scum and derelict into the Band to boost his power base," *id.* at ¶ 36;
(4) Minnichbach's statements:
(a) to band parents and students concerning the accusations of sexual misconduct filed against Kadetsky, *see id.* at ¶ 23;
(b) to band parents that Kadetsky falsified his resume and was improperly using the school computer to design the football shows of other schools, for his personal financial gain, *see id.*;
(c) to Jay Kearns that, "if he (Minnichbach) had his way on the Board of Education, [Kadetsky] would not be working with the children of the Township because [Kadetsky] was unfit," Complaint at ¶ 36;
(5) Dr. Heery's statements to a Superintendent from another school district that "he supported [Kadetsky] until the Principal (Ridolfino) found out that [Kadetsky] liked boys and was not a competent teacher." *Id.* at ¶ 21.

defamatory statements in *Young* involved conduct entirely separate and distinct from the conduct at issue in the CEPA claim. *See* Def.'s Reply at 4. It follows, the Defendants argue, that in this case, since some of the defamatory statements arose from the retaliation alleged by Kadetsky to be in violation of CEPA, the defamation claims must be waived. *See id.* This Court finds that the Defendants' contention is in direct conflict with *Young's* clear statement of law.

The Supreme Court of New Jersey has made it clear that claims, including defamation, that "require different proofs than those required to sustain the CEPA claim and do not require a showing of retaliation as does a CEPA claim" are not waived by the institution of the CEPA claim. *Young*, 141 N.J. at 32, 660 A.2d 1153. Clearly, a plaintiff need not show retaliation to state a claim for defamation.[12] Consequently, I find that, although some of the many defamation claims involve factual scenarios that also form the substantive basis of the CEPA retaliation claim, Kadetsky's defamation claims are independent of, and not related to, his CEPA claim and therefore are not waived under N.J.S.A. 34:19–8.[13]

### 2. Kadetsky Has Stated a Claim for Defamation Against Ridolfino and Minnichbach

In support of their motion to dismiss Kadetsky's defamation claims against Defendants Ridolfino and Minnichbach, the Defendants advance three separate arguments that Kadetsky has failed to adequately state a claim. First, the Defendants contend that Kadetsky himself discussed the false charges of sexual misconduct with his colleagues and union representative and that Ridolfino never himself communicated the information to third parties. *See* Def.'s Br. at 36. Next, the Defendants argue that Minnichbach's statements concerning the contents of the letter cannot rise to the

---

**12.** In New Jersey, to state a claim for defamation a plaintiff must establish, in addition to damages: (1) that the defendant made a defamatory statement of fact; (2) concerning the plaintiff; (3) which was false; (4) which was communicated to a person or persons other than the plaintiff; and (5) fault. *See Feggans v. Billington*, 291 N.J.Super. 382, 390–91, 677 A.2d 771 (App.Div.1996).

**13.** In their brief, the Defendants advance the broad proposition that "plaintiff's ***common law causes of action*** are linked to and arise out of the same facts giving rise to his CEPA claim." Def.'s Br. at 14 (emphasis added). In support of this claim, the Defendants argue that Kadetsky's claims of negligent and intentional infliction of emotional distress, tortious interference with a contractual relationship and defamation should be dismissed pursuant to CEPA's waiver provision. Def.'s Br. at 14–15. Because, as set forth above, this Court found that Kadetsky had waived his claims for negligent and intentional infliction of emotional distress and tortious interference with a contractual relationship, the Defendants' waiver argument survived only with respect to Kadetsky's defamation claim.

However, Kadetsky's common law invasion of privacy claim, or Count IV of the Complaint, is conspicuously absent from the Defendants' list of common law claims to which they contend the CEPA waiver provision applies. Because it is unclear whether the Defendants intended to include Kadetsky's common law invasion of privacy claim, this Court will, for the sake of clarity, address the argument.

Assuming without deciding that Kadetsky seeks to state a claim for false light invasion of privacy under New Jersey law, he must allege that the Defendants:

> [Gave] publicity to a matter concerning [Kadetsky] that places [him] before the public in a false light [and]
>> (a) the false light in which [Kadetsky] was placed would be highly offensive to a reasonable person, and
>> (b) the [Defendants] had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which [Kadetsky] would be placed.

*Romaine v. Kallinger*, 109 N.J. 282, 290, 537 A.2d 284 (1988).

Clearly, a claim for false light invasion of privacy does not require a finding of retaliation. *See id.* Accordingly, for the reasons set forth in connection with this Court's analysis of the defamation claim, I find no merit to the Defendants' argument that Kadetsky's common law invasion of privacy claim falls within the CEPA waiver provision.

level of defamation because he merely "repeated" false accusations. *See id.* at 37. Finally, the Defendants maintain that, with respect to Minnichbach, Kadetsky failed to allege special damages, essential for his defamation claim since Minnichbach's statements "do not constitute slander *per se.*" *Id.* at 39.

As set forth above, to state a claim for defamation a plaintiff must establish, in addition to damages: (1) that the defendant made a defamatory statement of fact; (2) concerning the plaintiff; (3) which was false; (4) which was communicated to a person or persons other than the plaintiff; and (5) fault. *See Feggans v. Billington,* 291 N.J.Super. 382, 390–91, 677 A.2d 771 (App.Div.1996). This Court finds the Defendants' first contention, that Ridolfino never communicated to a third party the content of the Letter, to be wholly without merit.

The Defendants rely on paragraph 21 of the Complaint, stating that "Ridolfino advised other Administration Officials such as the Superintendent (Dr. Kelpsh) and Assistant Superintendent (Dr. Heery) of the alleged letter," to argue that "[Kadetsky] does not specifically allege that Ridolfino advised these individuals that the letter accused [Kadetsky] of illegal conduct with a student in his care and sexual misconduct." *See* Def.'s Br. at 35. In ignoring the clear and logical inference that Ridolfino disclosed the contents of the "alleged letter" to the administrators, the Defendants seek to convert the liberal pleading requirements of the Federal Rules of Civil Procedure into something they are not. Simply stated, I find that the Complaint adequately notifies Ridolfino of the defamation claims brought against him and that the inference that Ridolfino communicated the contents of the Letter to the administrators is sufficient to support Kadetsky's claim.

This Court also rejects the Defendants' contention that Minnichbach's statements to band parents and students concerning the charges lodged against Kadetsky cannot rise to the level of defamation. "In New Jersey, one who republishes defamatory matter is generally subject to liability as if he or she had originally published it." *Schiavone Constr. Co. v. Time, Inc.,* 735 F.2d 94, 96 (3d Cir.1984) (citations omitted).[14] Because there are a set of facts under which Minnichbach's statements could be defamatory, the Defendants' motion to dismiss on the ground that one who "repeats" defamatory statements cannot be liable is denied.

Finally, this Court turns to the Defendants' contentions regarding the doctrine of slander *per se.* In New Jersey, the slander *per se* doctrine is limited to defamatory statements which impute to another person (1) a criminal offense; (2) a loathsome disease; (3) conduct, characteristics or a condition that is incompatible with his business, trade or office; or (4) serious sexual misconduct. *See Biondi v. Nassimos,* 300 N.J.Super., 148, 154, 692 A.2d 103 (App.Div.1997) (citations omitted). If a defamatory statement constitutes slander *per se,* a plaintiff may establish a cause of action without proving "special damages," that is, "the loss of something having economic or pecuniary

---

**14.** In addition to citing New Jersey case law, the *Schiavone* Court found support in the Restatement (Second) of Torts § 578, which provides that "[e]xcept as those who only deliver or transmit defamation published by a third person, one who repeats or otherwise republishes defamatory matter is subject to liability as if he had originally published it."

Also illustrative is comment c of the accompanying notes:

[O]ne who repeats a slanderous statement originally published by a third person is subject to liability to the person defamed as though he had himself originated the statement. This is true although the speaker accompanies the slander with a statement that it is a rumor only, or designates the name of the author or the original publisher.

Restatement (Second) of Torts § 578, comment c (1976).

value." *Ward v. Zelikovsky*, 136 N.J. 516, 540–41, 643 A.2d 972 (1994).[15]

 In this case, Kadetsky need not allege "special damages" to support his claim for defamation since he has sufficiently alleged a claim for slander *per se.* Minnichbach's alleged statements to band parents, that Kadetsky had falsified his resume and was "improperly using a computer program purchased for the Egg Harbor Township High School band to develop shows for other high schools and improperly getting paid from the other schools" states a claim for "conduct ... incompatible with his business, trade or office." *See e.g., DeVries v. McNeil Consumer Products Co.*, 250 N.J.Super. 159, 167, 593 A.2d 819 (App.Div.1991)(finding that jury could find statements that plaintiff engaged in unprofessional and unethical practices could have "the capacity to impugn [plaintiff's] professionalism" and therefore could constitute slander *per se* ). Accordingly, I shall deny the Defendants' motion to dismiss on the ground that Kadetsky failed to allege special damages from Minnichbach's statements.

### 3. *The Qualified Privilege and Its Abuse*

The Defendants next argue that even if the statements of Ridolfino and Levine are defamatory, the two supervisors enjoy a qualified privilege and therefore cannot be liable for defamation. *See* Def.'s Br. at 32–36. Without addressing the applicability of the privilege, Kadetsky contends that he has sufficiently alleged an abuse of the privilege and therefore has stated a claim upon which relief may be granted. *See* Pl.'s Br. at 30–31.

 In New Jersey, a statement, although defamatory, is not actionable if it is subject to an absolute or qualified privilege. *See Erickson v. Marsh & McLen-*

*nan Co.*, 117 N.J. 539, 563, 569 A.2d 793 (1990). An absolute privilege, which wholly immunizes the publisher from liability, arises in the narrow context of statements made in the course of judicial, administrative, or legislative proceedings. *See id.* The qualified, or conditional, privilege is applicable to a broader range of situations, specifically when a "statement is made for a common interest shared between the publisher and the recipient." *Monroe v. Host Marriot Services Corp.*, 999 F.Supp. 599, 604–05 (D.N.J.1998)(Irenas, J.)(citing *Williams v. Bell Tel. Labs., Inc.*, 132 N.J. 109, 121, 623 A.2d 234 (1993); *Coleman v. Newark Morning Ledger Co.*, 29 N.J. 357, 376, 149 A.2d 193 (1959); *Gallo v. Princeton Univ.*, 281 N.J.Super. 134, 142, 656 A.2d 1267 (App.Div.1995)). For example, the nature and scope of the qualified privilege has been stated as the following:

> A communication 'made bona fide upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, although it contains criminatory matter which, without this privilege, would be slanderous and actionable. . . .'

*Williams*, 132 N.J. at 121, 623 A.2d 234 (quoting *Coleman*, 29 N.J. at 375, 149 A.2d 193).

 Whether or not a statement is privileged is a question of law for the Court to decide. *See Bainhauer v. Manoukian*, 215 N.J.Super. 9, 40, 520 A.2d 1154 (App.Div.1987). "In determining whether the qualified privilege is a defense, it is irrelevant whether the statement at issue was defamatory." *Feggans v. Billington*, 291 N.J.Super. 382, 393, 677 A.2d 771 (App.Div.1996). Instead, a Court should apply the following factors:

---

**15.** Undoubtedly, the doctrine of slander *per se* has been highly criticized for its rule that parties need not prove special damages. *See id.* at 541, 643 A.2d 972. Yet, the Supreme Court of New Jersey continues to recognize what it has called a "relic from tort law's previous age," explicitly leaving "for another time" the issue of whether to eliminate the doctrine altogether. *See Ward*, 136 N.J. at 541, 643 A.2d 972.

[T]he critical test of the existence of the privilege is the circumstantial justification for the publication of the defamatory information. The critical elements of this test are the appropriateness of the occasion on which the defamatory information is published, the legitimacy of the interest thereby sought to be protected or promoted, and the pertinence of the receipt of that information by the recipient.

*Erickson,* 117 N.J. at 564, 569 A.2d 793 (quoting *Bainhauer v. Manoukian,* 215 N.J.Super. 9, 36–37, 520 A.2d 1154 (App. Div.1987)).

The Defendants contend that the following allegedly defamatory statements are subject to the qualified privilege: (1) Ridolfino's statements to the Superintendent, Dr. Kelpsh, and Assistant Superintendent, Dr. Heery, regarding the allegations of Kadetsky's alleged sexual improprieties; (2) the false letters of reprimand placed in Kadetsky's personnel file by Ridolfino and Levine; (3) Levine's statements to Kadetsky's new supervisor, Jay Kearns, that (a) Kadetsky was mishandling band funds and "illegally requiring all students to sign up for marching band" and (b) Kadetsky would let "any scum and derelict into the Band to boost his power base." *See* Def.'s Br. at 32–36.

 Without deciding whether the underlying statements are defamatory, this Court holds that, as a matter of law, the statements by Ridolfino to the named administrators about the contents of the Letter and the letters of reprimand placed in Kadetsky's personnel file by Ridolfino and Levine are subject to the qualified privilege. As Kadetsky's supervisors, Ridolfino and Levine had a recognized interest in

the content of the allegedly defamatory statements, notably that Kadetsky was shirking his employment responsibilities and had been accused of sexual misconduct by the parents of one of his students. *See Monroe,* 999 F.Supp. at 605 (holding that publication of critical office performance memorandum is protected by qualified privilege); *Lutz v. Royal Ins. Co. of America,* 245 N.J.Super. 480, 498, 586 A.2d 278 (App.Div.1991)(supervisor's letter, reciting allegations of allegedly victimized employee, to territorial vice president protected by qualified privilege). Moreover, the two defendants placed this information in Kadetsky's personnel file and Ridolfino communicated the content to his supervisors, the Superintendent and Assistant Superintendent of the Egg Harbor Township School District. *See Feggans v. Billington,* 291 N.J.Super. at 393–94, 677 A.2d 771 (petition sent by plaintiff's co-workers to supervisor and union representative were not excessively published and therefore subject to qualified privilege).[16]

 A qualified privilege may be lost, and the publisher therefore liable, upon a finding that the privilege was abused. It is well-settled that abuse arises when: "(1) the publisher knows the statement is false or the publisher acts in reckless disregard of its truth or falsity; (2) the publication serves a purpose contrary to the interests of the qualified privilege; or (3) the statement is excessively published." *Kass v. Great Coastal Express, Inc.,* 152 N.J. 353, 356, 704 A.2d 1293 (1998)(quoting *Williams,* 132 N.J. at 121, 623 A.2d 234). Whether there has been an abuse of the qualified privilege is an issue normally reserved for the jury. *See Erickson,* 117 N.J. at 566, 569 A.2d 793.

**16.** This Court does not decide, as a matter of law, that Levine's statements to Jay Kearns are covered by a qualified privilege. According to the Complaint, Levine's statements were made to Kadetsky's new supervisor after Levine had been removed from the Music Supervisor post and reassigned to a basic skills and music position in a new school. *See* Complaint at ¶ 38. It is, therefore, not clear from the record before this Court that

Levine had a sufficiently legitimate interest in communicating Kadetsky's alleged financial indiscretions or recruiting practices to Mr. Kearns. Accordingly, I shall deny the Defendants' motion to dismiss on the ground of the qualified privilege with respect to Levine's statements to Mr. Kearns and leave for another day the applicability of the privilege to such statements.

In this case, Kadetsky has sufficiently alleged an abuse of the privilege. In the Complaint, Kadetsky alleges that the statements made by the Defendants "were made maliciously and with knowledge of their falsity or with serious doubt as to their truth...." Complaint at ¶ 43. Accepting as true the allegations of Kadetsky's Complaint, I find that Kadetsky has stated a valid claim for defamation. *See Patlovich v. Rudd*, 949 F.Supp. 585, 594 (N.D.Ill.1996)(allegations that defendant abused privilege were sufficient to overcome conditional privilege and defeat motion to dismiss pursuant to Illinois law); *Tynecki v. Tufts Univ. Sch. of Dental Med.*, 875 F.Supp. 26, 35–36 (D.Mass. 1994)(same, interpreting Massachusetts law); *Geyer v. Faiella*, 279 N.J.Super. 386, 392–93, 652 A.2d 1245 (App.Div.1995)(reversing trial court's dismissal of conditionally privileged defamation claim where complaint alleged that defendant made knowingly false statements). Accordingly, I shall deny the Defendants' motion to dismiss on the ground of the qualified privilege.

## IV. CONCLUSION

For the reasons set forth above, I shall grant in part and deny in part the Defendants' motion to dismiss Kadetsky's Complaint for failure to state a claim upon which relief can be granted. The Court shall enter an appropriate Order.

## ORDER

This matter having come before the Court on the motion of the Defendants, Egg Harbor Township Board of Education, Howard Minnichbach, Ralph A. Ridolfino, and Dr. Jean Levine, to dismiss the Complaint of Plaintiff, Mark C. Kadetsky, pursuant to Federal Rule of Civil Procedure 12(b)(6), Joseph F. Betley, Esq. of Capehart & Scatchard, P.A., appearing on behalf of the Defendants, Egg Harbor Township Board of Education, Howard Minnichbach, Ralph A. Rildolfino, and Dr. Jean Levine, and Richard T. Fauntleroy, Esq. of Richard T. Fauntleroy, P.C., appearing on behalf of Plaintiff, Mark C. Kadetsky; and,

The Court having considered the submissions of the parties, for the reasons set forth in the OPINION filed concurrently with this ORDER;

IT IS, on this 20th day of January, 2000, hereby ORDERED that:

1. The motion of the Defendants to dismiss the Complaint for failure to state a claim is GRANTED in part and DENIED in part;

2. The Defendants' motion to dismiss the First Amendment retaliation claims contained in Count I of the Complaint on the grounds that Kadetsky failed to state a claim for protected speech or allege an adverse employment action is DENIED;

3. The Defendants' motion to dismiss the Fourteenth Amendment due process claim contained in Count I of the Complaint is GRANTED, on the ground that Kadetsky suffered no tangible loss of present or future employment;

4. The Defendants' motion to dismiss the due process claim under the New Jersey Constitution, contained in Count V of the Complaint, is DENIED, on the ground that the State Constitution recognizes a liberty interest in reputation without a tangible loss;

5. The Defendants' motion to dismiss Count II of the Complaint, Kadetsky's claim under New Jersey's Conscientious Employee Protection Act, is GRANTED, on the ground that Kadetsky failed to suffer retaliatory action under the meaning of the Act;

6. The Defendants' motion to dismiss the numerous defamations claims contained in Count III of the Complaint is DENIED for the reasons set forth in the OPINION filed concurrently with this ORDER.