**Mark C. KADETSKY, Plaintiff,**

v.

**EGG HARBOR TOWNSHIP BOARD OF EDUCATION, Howard Minnichbach, Board Member, Ralph A. Ridolfino, Principal, Egg Harbor Township High School, Dr. Jean Levine, Department Head, Jointly, Severally, and in the Alternative, Defendants.**

**No. CIV. A. 99cv00842.**

United States District Court, D. New Jersey.

Sept. 10, 2001.

---

Richard T. Fauntleroy, Esq., Richard T. Fauntleroy, P.C., Pleasantville, NJ, for Plaintiff, Mark C. Kadetsky.

Joseph F. Betley, Capehart & Scatchard, P.C., Mt. Laurel, NJ, for Defendants, Egg Harbor Township Board of Education, Howard Minnichbach, Ralph A. Ridolfino, Dr. Jean Levine.

OPINION

ORLOFSKY, District Judge.

This hotly contested employment dispute raises the question of whether the continuous acrimony between a public high school teacher and his supervisors rises to the level of a violation of the teacher's constitutional and federal statutory rights. While I acknowledge that the events that are the subject of this lawsuit have vexed all parties involved, after consideration of the summary judgment record, I conclude that Plaintiff's claims do not constitute violations of the Constitution of the United States or federal law.

Plaintiff, Mark Kadetsky, a tenured high school band director at Egg Harbor Township High School, brought this federal action pursuant to 42 U.S.C. § 1983[1], alleging that the actions of the Egg Harbor Township Board of Education and several of its employees constituted retaliatory conduct in violation of Kadetsky's First Amendment rights of free speech and petition and his Fourteenth Amendment rights to due process. Plaintiff also alleged pendant state claims under the New Jersey State Constitution, New Jersey's Conscientious Employee Protection Act (CEPA), and common law claims of defamation.

I previously concluded in this case that Plaintiff had failed to state a claim upon which relief can be granted on his CEPA and federal due process claims. *See Kadetsky v. Egg Harbor Township Board of Education*, 82 F.Supp.2d 327, 338, 340 (D.N.J.2000)(*"Kadetsky I"*).

---

1. 42 U.S.C. § 1983 provides in relevant part: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. 42 U.S.C. § 1983 (2000).

Defendants now move for Summary Judgment, pursuant to Fed.R.Civ.P. 56, on Plaintiff's remaining claims; specifically, violations of his First Amendment rights to petition and free speech under 42 U.S.C. § 1983, violation of his right to due process under the New Jersey Constitution, and common law claims of defamation. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1343(a)[2] and 1367(a)[3].

For the reasons set forth below, I shall grant Defendants' Motion for Summary Judgment on Plaintiff's federal law claims and decline to exercise supplemental jurisdiction over Plaintiff's remaining pendant state claims. Accordingly, Plaintiff's state law claims shall be dismissed without prejudice to his right to pursue such claims in state court. I intimate no opinion as to the merits of Kadetsky's state law claims.

## I. BACKGROUND

The facts of this case are many and were set out in *Kadetsky I* and will not be repeated here. For purposes of this opinion, a brief summary will suffice.

Kadetsky became the band director at Egg Harbor Township High School in the 1995–96 school year. His employment contract was renewed in successive years until 1998, the year when Kadetsky was slated to receive tenure. *See* Complaint at ¶¶ 10, 11. Kadetsky contends that beginning in January, 1998, the Principal of Egg Harbor Township High School, Ralph A. Ridolfino ("Ridolfino"), and Kadetsky's immediate superior, Music Department Head, Dr. Jean Levine ("Levine"), set out to create a false record of poor work performance in order to prevent Kadetsky from obtaining tenure. *Id.* at ¶ 12.

On February 25, 1998, Kadetsky took an "emergency personal day" to meet with his union representative to discuss the allegedly false records that Levine and Ridolfino were putting into his personnel file. As a result, Ridolfino sent a letter accusing Kadetsky of insubordination for taking a personal day without permission. *Id.* at ¶ 14.

On or about March 9, 1998, Kadetsky filed a formal grievance with the Teacher's Association to have this letter removed from his personnel file. *Id.* at ¶ 15. Kadetsky also sent a handwritten note to the Superintendent of Schools, Dr. Leonard

---

**2.** 28 U.S.C. § 1343 provides, in relevant part:

The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
(1) To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42;
(2) To recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and power to prevent;
(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress pro-

viding for equal rights of citizens or of all persons within the jurisdiction of the United States;
(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.
*See* 28 U.S.C. § 1343 (2000).

**3.** 28 U.S.C. § 1367 provides, in relevant part:
(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.
*See* 28 U.S.C. § 1367(a)(2000).

Kelpsh ("Kelpsh"), requesting his assistance in dealing with the problems he was encountering with his supervisor, Levine. *Id.* at ¶ 16.

Kadetsky alleges that in retaliation for filing the grievance and for his written appeal to Kelpsh, Ridolfino and Levine "engineered" a complaint from the parents of one of Kadetsky's band students. The complaint centered around Kadetsky's behavior toward a student on a school trip. *Id.* at ¶ 17.

Kadetsky further alleges that in retaliation for a report he filed concerning Ridolfino's improper behavior on school trips, lodged in May of 1996, Ridolfino and Levine retaliated by accusing Kadetsky of insubordination and failure to follow administrative procedures. *Id.* at ¶¶ 26, 30E.

In April, 1998, Kadetsky was informed that he would not receive a contract of employment for the 1998–99 school year. *Id.* at ¶¶ 18, 30G. Kadetsky sought a hearing before the Egg Harbor Board of Education regarding the issues affecting his bid for tenure and the complaints made about him by Ridolfino and Levine. *Id.* at ¶ 32. As a result of the Board's investigation, Kadetsky's personnel file was purged, Levine was removed from her position as Kadetsky's supervisor and appointed to a basic skills and elementary school music position, and Kadetsky was granted tenure after receiving a contract of employment for the 1998–99 school year. *Id.* at ¶ 33.

## II. THE LEGAL STANDARD GOVERNING A MOTION FOR SUMMARY JUDGMENT

"On a motion for summary judgment, the court must determine whether the evidence shows that 'there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Abraham v. Raso*, 183 F.3d 279, 287 (3d Cir.1999) (citing Fed.R.Civ.P.

56(c)). "Any factual dispute invoked by the nonmoving party to resist summary judgment must be both material in the sense of bearing on an essential element of the plaintiff's claim and genuine in the sense that a reasonable jury could find in favor of the nonmoving party." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "In opposing summary judgment, a party 'must do more than simply show that there is some metaphysical doubt as to material facts,' *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), but a court should not prevent a case from reaching a jury simply because the court favors one of several reasonable views of the evidence." *Abraham*, 183 F.3d at 287. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505; *see also Abraham*, 183 F.3d at 287. "Thus, while the nonmoving party must present enough evidence to demonstrate a dispute is genuine, all inferences in interpreting the evidence presented by the parties should be drawn in favor of the nonmoving party." *Abraham*, 183 F.3d at 287 (citing *Boyle v. County of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir.1998)). "Cases that turn crucially on the credibility of witnesses' testimony in particular should not be resolved on summary judgment." *Id.*

If the nonmoving party fails to oppose the motion by written objection, memorandum, affidavits and other evidence, the Court "will accept as true all material facts set forth by the moving party with appropriate record support." *Anchorage Assocs. v. Virgin Islands Bd. of Tax Rev.*, 922 F.2d 168, 175 (3d Cir.1990) (quoting *Jaroma v. Massey*, 873 F.2d 17, 21 (1st

Cir.1989)). Even where the non-moving party has failed to establish a triable issue of fact, summary judgment will not be granted unless "appropriate." Fed. R.Civ.P. 56(e); *see Anchorage Assocs.*, 922 F.2d at 175. Rule 56(e) of the Federal Rules of Civil Procedure requires that the case be evaluated on its merits, with summary judgment being granted for the movant only if they are entitled to a judgment as a matter of law. *See Anchorage Assocs.*, 922 F.2d at 175.

## III. DISCUSSION

### A. Kadetsky's § 1983 Claims

#### 1. Board of Education Liability

 It is well settled that "[u]nder 42 U.S.C. § 1983, municipal defendants cannot be held liable under a theory of respondeat superior; municipal liability only arises when a constitutional deprivation results from an official custom or policy." *Montgomery v. DeSimone*, 159 F.3d 120, 126 (3d Cir.1998) (citing *Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658, 691–94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Municipal customs for § 1983 purposes are those practices that "[a]lthough not authorized by written law, ... [are] so permanent and well-settled as to constitute a 'custom or usage' with the force of law." *Monell*, 436 U.S. at 691, 98 S.Ct. 2018 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). Municipal liability may be found if it can be shown that the policy maker failed to train its employees in deliberate indifference to the potential for violation of the constitutional rights of those with whom the employee comes into contact. · *See City of Canton v. Harris*, 489 U.S. 378, 388–89, 109 S.Ct. 1197, 103 L.Ed.2d 412.

 Kadetsky acknowledges that municipal defendants cannot be held liable under a theory of respondeat superior. *See* Pl.'s Br. at 61. He also accepts Defendants' contention that the only "policy-makers" who may be subject to derivative liability under § 1983 are the Superintendent of Schools and the Board of Education. However, Kadetsky argues that the Board delegated its policy-making authority to Kelpsh, the Superintendent of Schools, who, in turn, acted with deliberate indifference to the alleged violation of Kadetsky's constitutional rights. Kadetsky alleges that this was done, not through a failure to train or enforce school policies, but by the single act of approving Ridolfino's recommendation to not renew Kadetsky's employment contract. Kadetsky argues that Kelpsh should have been aware that the real purpose of the negative memos which Ridolfino and Levine placed in Kadetsky's personnel file was to carry out their nefarious plot to dispose of Kadetsky, not to fulfill their responsibilities as supervisors.

The summary judgment record does not support such a claim. Rather, the undisputed factual record reveals that Kelpsh followed established procedures to investigate Kadetsky's complaints and rectify his personnel record in response to that investigation. *See* Pl.'s App. at Pa–105 (3/19/98 Memo from Asst. Superintendent in Response to Handwritten Note). Kadetsky has produced no evidence which would suggest that Kelpsh was or should have been aware that the complaints from Ridolfino and Levine, which on their face, appear to be routine monitoring of a teacher under their supervision, *see* Pl.'s App. at Pa–80 (2/9/98 Letter to Kelpsh & Ridolfino from Levine); Pa–84 (2/23/98 Memo to Ridolfino from Levine to Deny Plaintiff's [Schedule] Request); Pa–86 (2/23/98 Ridolfino Memo Re: Use of Personal Day to Meet Union Representative); Pa–27/98 (2/26/98 Memo From Levine To Plaintiff

Re: Rehearsal Conflicts), were, in fact, part of a "conspiracy" to deny Kadetsky tenure.

■ Moreover, the summary judgment record contains no evidence of an established custom or policy condoning the violation of Plaintiff's constitutional rights; therefore, I shall grant Defendants' Motion for Summary Judgment on § 1983 liability as it pertains to the Egg Harbor Board of Education.

2. First Amendment Retaliation

■■ To assert a claim of retaliation for the exercise of constitutionally protected rights, a public employee must show that the activity was protected and was a substantial or motivating factor in the alleged retaliation. Defendants may defeat plaintiff's claim by showing "that the same action would have been taken even in the absence of the protected activity." *Kadetsky I*, 82 F.Supp.2d at 335 (internal quotation omitted).

a. Right to Petition

Kadetsky alleges that Defendants, Ridolfino and Levine, violated his First Amendment right to Petition. Specifically, Kadetsky claims that the official grievance which he filed on March 9, 1998 and the handwritten note he sent to Kelpsh, regarding the adverse treatment he was receiving from Defendants, prompted Ridolfino to exaggerate and misconstrue a complaint from parents concerning Kadetsky's behavior toward their son and prompted Levine to write many memos regarding Kadetsky's failure to conform to administrative procedures.

■■ In *Kadetsky I*, I concluded that Kadetsky's grievance was "protected speech" under the First Amendment, *see Kadetsky I*, 82 F.Supp.2d at 336; thus, the issue to be decided on Defendants' Motion

for Summary Judgment is whether Kadetsky has raised genuine issues of material fact about whether his grievance was a "substantial or motivating factor in the alleged retaliation" or whether the same actions would have occurred in the absence of Kadetsky's grievance.

After a thorough review of the summary judgment record, I conclude that Kadetsky has failed to meet his burden. Despite the temporal proximity of the filing of the grievance and the incident concerning the student, there is nothing to suggest that Ridolfino urged the parents to write the letter of complaint. Although Kadetsky claims that Ridolfino put a "slant" on the incident to suggest sexual impropriety on Kadetsky's part, Kadetsky has produced no evidence which indicates that Ridolfino did anything but thoroughly investigate a letter of concern from the parents of a student who was allowed to sleep in Kadetsky's hotel room on a school band trip. *See* Pl.'s App. at Pa–107–08 (3/18/98 Letter to Levine & Ridolfino from Parents of G.L.); Pa–110 (3/26/98 Notes of Ridolfino from Meeting with Plaintiff & Cohen); Cohen Dep. at 185–88 ("He [Ridolfino] asked questions like did you ever have private dinners with students or were they with 12 or 15 people.... He [Ridolfino] said that you've exhibited—you weren't going to get tenure because you exhibited poor judgment. He told him it was the hardest thing he had ever done was [sic] telling someone that he wasn't going to get tenure and that he should ignore my [Cohen's] advice.") Finally, Kadetsky's claims that Ridolfino tried to "silence" him appears to have been nothing more than an effort by Ridolfino to contain the possible damage to the school, the student, and Kadetsky that could have resulted if the incident became public. *See* Cohen Dep. at 188 ("[Ridolfino said] Take a look at what people will think if this gets in the paper if you were to fight this thing.... This hits the newspaper,

this is going to ruin your career."); Pl.'s App. at Pa–111 (Ridolfino Memo of 3/26/98 to Kadetsky's Union Representative stating: "There is to be no discussion of the contents of the L[ ] letter or any contact or retribution to the student by either you or Mark. Would you please contact Mark to go over this directive with him").

■ Kadetsky's claims of retaliation from Levine are equally without merit. There is no evidence that Levine knew of the grievance which Kadetsky filed; thus, to perceive her subsequent actions as retaliatory strains logic. Although Levine contacted the parents and asked them to write out their complaints, she did so in conformity with a standard school policy. *See* Levine Dep. at 40. The memos which Levine wrote concerning Kadetsky all concerned his adherence to administrative policies which were within Levine's province to monitor. All the memos appear to be written dispassionately and in a manner typical of an administrator concerned with maintaining order in the school functions under her supervision and ensuring adherence to procedure among those employees she supervised. *See* Pl.'s App. at Pa–83 (2/23/98 Memo to Ridolfino from Levin; re: Plaintiff's Scheduling Request); Pa–80 (2/9/98 Letter to Kelpsh & Ridolfino from Levine).

I conclude that Plaintiff has failed to raise a genuine issue of material fact concerning his First Amendment Right to Petition claim. I shall therefore grant Defendant's Motion for Summary Judgment on the right to petition prong of Kadetsky's retaliation claim.

b. Freedom of Speech

■ Pursuant to 42 U.S.C. § 1983, public employees may sue to enforce the constitutional protection of their speech if: "(1) they spoke on a matter of public concern; (2) their interest in that field outweighs the government's concern with the effective and efficient fulfillment of its responsibilities to the public; (3) the speech caused the retaliation; and (4) the adverse employment decision would not have occurred but for the speech." *Fogarty v. Boles,* 121 F.3d 886, 888 (3d Cir.1997).

■ This Court articulated the standard for determining whether speech addresses a matter of public concern in *Carlino v. Gloucester City High School,* 57 F.Supp.2d 1 (D.N.J.1999):

A public employee's speech involves a matter of public concern if it can be [of] political, social, or other concern to the community. Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record. When an employee [comments] upon matters only of personal interest, that public employee speaks not as a citizen upon matters of public policy.

*Id.* at 31 (quoting *Connick v. Myers,* 461 U.S. 138, 146–48, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)). Inquiry into "the speaker's motivation is relevant to the extent that it indicates whether the speaker is speaking as 'a citizen upon matters of public concern' or as a volunteer 'upon matters only of personal interest.'" *Versarge v. Township of Clinton New Jersey,* 984 F.2d 1359, 1364 (3d Cir.1993)(quoting *Connick,* 461 U.S. at 147, 103 S.Ct. 1684). "To presume that all matters which transpire within a[ ] [public school] are of public concern would mean that virtually every remark ... would plant the seed of a constitutional case." *Connick,* 461 U.S. at 149, 103 S.Ct. 1684. It is well-settled in the Third Circuit that "speech disclosing public officials' misfeasance is protected while speech intended to air personal grievances is not." *See Swineford v. Sny-*

*der County Pennsylvania,* 15 F.3d 1258, 1271 (3d Cir.1994).

To illustrate the distinction between personal grievances and disclosure of official misfeasance, *Swineford* collected cases where the criticisms of public employees were found to be matters of public concern: *Zamboni v. Stamler,* 847 F.2d 73, 77 (3d. Cir. 1988)(civil service employee's criticism of county prosecutor's reorganization and promotion plan); *Rode v. Dellarciprete,* 845 F.2d 1195, 1201 (3d Cir. 1988)(state police civilian employee's communication to the press of racial profiling); *Czurlanis v. Albanese,* 721 F.2d 98, 104 (3d Cir.1983)(county auto mechanic's criticism of internal management of Department of Motor Vehicles); *Trotman v. Board of Trustees,* 635 F.2d 216, 225 (3d Cir.1980)(professor's criticism of university president's efforts to increase the school's faculty/student ratio).

When viewed against this backdrop, Kadetsky's speech fails to qualify as speech touching upon a matter of public interest. Although Kadetsky characterizes his speech as challenging "defendants' violation of the collective bargaining agreement" and a "violation of the school districts [sic] Sexual Harassment Policy" *see* Pl.'s Br. at 56, the summary judgment record indicates that Kadetsky was motivated at all times by concern for his personal employment, rather than by a desire to expose errant school policies or malfeasance on the part of his superiors for the betterment of the public.

■ Furthermore, even if Kadetsky's speech concerning Ridolfino's investigation into the parental complaint could be characterized as a matter of public concern, his interest in its publicity would be outweighed by the school's interest in protecting the identity of the student and frankly, in protecting the reputation of Kadetsky himself, *see* Ridolfino Dep. at 135.

■ Finally, as I noted above in my discussion of Kadetsky's right to petition claims, I find that Kadetsky has failed to raise genuine issues of material fact relating to the causation prongs of his prima facie case. There is nothing in the summary judgment record which indicates that Kadestsky's criticisms of Ridolfino precipitated Ridolfino's decision not to recommend Kadetsky for a tenured position. Instead, the record indicates that Ridolfino's decision had been taking shape as the incidents with Kadetsky escalated throughout the school year and that the decision was finally reached when he received the letter from the band student's parents. *See* Ridolfino Dep. at 61, 80, 84. Kadestsky has cast additional doubt on the claim by making conflicting assertions as to when Ridolfino informed him that he would not be recommending Kadetsky for tenure. If Kadetsky's initial papers are to be believed, Ridolfino informed him of his decision *before* Kadetsky engaged in any protected speech. If his later assertions are to be believed, Ridolfino's decision was communicated to Kadetsky only a few days after Kadetsky had begun talking to his colleagues about his meeting with Ridolfino.

I conclude that Plaintiff has failed to raise genuine issues of material fact as to whether his speech was a matter of public concern, whether his speech was a substantial cause of the alleged retaliation, or whether Ridolfino's decision not to recommend tenure would not have occurred but for Kadetsky's speech. Consequently, I shall grant Defendants' Motion for Summary Judgment on the Free Speech prong of Plaintiff's First Amendment Retaliation Claim.

**B. State Law Claims**

■ Having determined that Plaintiff has failed to raise genuine issues of mate-

rial fact on his federal claims under 42 U.S.C. § 1983, the claims which remain present issues of state constitutional law and state formulations of common law, over which this court may exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367[4]. The contours of federal supplemental jurisdiction were explained in the Supreme Court's opinion in *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The decision to exercise supplemental jurisdiction involves a two-step process. First, the District Court must determine if it has the power to hear Plaintiff's state law claims. This analysis requires the Court to consider whether the federal claim has "substance sufficient to confer subject matter jurisdiction on the court," if the state and federal claims "derive from a common nucleus of operative fact," and if "plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding." *Id.* The Third Circuit has articulated an additional consideration. The federal court must also determine whether the exercise of jurisdiction "would violate a particular federal policy decision." *Ambromovage v. United Mine Workers of America*, 726 F.2d 972, 990 (3d Cir.1984).

▮ If the court finds that it possesses the power to hear the pendant claim(s), then it still possesses the discretion to dismiss plaintiff's state law claims if it finds that state issues substantially predominate, if "economy, convenience and fairness to the litigants" caution against supplemental jurisdiction, *Gibbs*, 383 U.S. at 726, 86 S.Ct. 1130 or if inclusion of state law claims could unduly complicate the case or confuse a jury. *Moor v. County of Alameda*, 411 U.S. 693, 716–17, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973). The federal court's decision should be guided by the goal of avoiding "[n]eedless decisions of state law ... both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Gibbs*, 383 U.S. at 726, 86 S.Ct. 1130. Declining to exercise supplemental jurisdiction is particularly warranted when the case calls for an interpretation of a state constitution. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*, 963 F.Supp. 395, 408 (D.N.J.1997).

▮ The Third Circuit has adopted a conservative approach to the discretionary prong of the *Gibbs* test. In *Tully v. Mott Supermarkets*, it stressed that the mere fact that considerable time and expense had already been devoted to a case was not sufficient to justify the exercise of supplemental jurisdiction. 540 F.2d 187, 196 (3d Cir.1976). Only "exceptional circumstances" of the level of the "invocation of a significant federal policy" or severe prejudice or unfairness to the parties should be considered as a basis for exercising supplemental jurisdiction when state law predominates. *Id.; see also Prospect Purchasing Co., Inc. v. Weber, Lipshie & Co.*, 694 F.Supp. 1149, 1157 (D.N.J.1988)

---

4. *See supra,* n. 3; *see also* 42 U.S.C. § 1983(c), which provides:
(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
 (1) the claim raises a novel or complex issue of State law,
 (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

 (3) the district court has dismissed all claims over which it has original jurisdiction, or

 (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.
*See* 28 U.S.C. § 1367(c)(2000).

("this Court will not now abide the total dismissal of plaintiff's action in federal court and possibly leave plaintiff without any forum because of the belated application of the statute of limitations"); *but see Lentino v. Fringe Employee Plans, Inc.,* 611 F.2d 474, 480 (3d Cir.1979) (the exercise of pendant jurisdiction was proper when the federal claim was not dropped until the morning of trial and over a year of pretrial proceedings had occurred).

█ Because Plaintiff's remaining claims concern interpretations of the New Jersey Constitution and require the application of a recent change in New Jersey state law concerning the pleading requirements for defamation on matters of public concern, *see Rocci v. Ecole Secondaire MacDonald–Cartier,* 165 N.J. 149, 156, 755 A.2d 583 (2000), I believe the prudent course is to decline to exercise supplemental jurisdiction over those claims. Consequently, I find it unnecessary to address Plaintiff's Motion for Leave to Amend His Complaint, as that Motion concerns only his common law claim of defamation.

## IV. CONCLUSION

For the reasons set forth above, I shall grant the Motion for Summary Judgment of Defendants, Egg Harbor Township Board of Education, Howard Minnichbach, Ralph A. Ridolfino, and Dr. Jean Levine on their federal claims under 42 U.S.C. § 1983 and dismiss Plaintiff's remaining state law claims without prejudice.

### ORDER

This matter having come before the Court on Defendants' motion for summary judgment, pursuant to Fed.R.Civ.P. 56, Richard T. Fauntleroy, Esq., appearing on behalf of Plaintiff, Mark C. Kadetsky, and Joseph F. Betley, Esq., appearing on behalf of Defendants, Egg Harbor Township Board of Education, Howard Minnichbach,

Ralph A. Ridolfino, and Dr. Jean Levine; and,

The Court having considered the submissions of the parties; and,

For the reasons set forth in the Opinion filed concurrently with this Order, IT IS, on this 10th day of September, 2001, hereby ORDERED that: (1) Defendants' Motion for Summary Judgment on Plaintiff's federal claims under 42 U.S.C. § 1983 is GRANTED; (2) The Court declines to exercise its supplemental jurisdiction over Plaintiff's pendent state law claims which are dismissed without prejudice; and (3) Plaintiff's Motion for Leave to Amend His Complaint is dismissed as moot.