**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0871-17T1

DR. MICHAEL CONTE,

    Plaintiff-Appellant,

v.

UNIVERSITY OF MEDICINE AND
DENTISTRY OF NEW JERSEY
(UMDNJ); RUTGERS, THE STATE
UNIVERSITY OF NEW JERSEY,
RUTGERS SCHOOL OF DENTAL
MEDICINE; DR. CECILE A.
FELDMAN, Dean, Rutgers School of
Dental Medicine; ANDREA WEST, COO
of Rutgers School of Dental Medicine;
LISA GROSSKREUTZ, Director of
Office of Employment Equity of
Rutgers; and JENNIER HELLSTERN,

    Defendants-Respondents.

_____

Argued October 23, 2018 – Decided December 17, 2018

Before Judges Yannotti and Gilson.

On appeal from Superior Court of New Jersey, Law
Division, Middlesex County, Docket No. L-5285-15.

Gerald Jay Resnick argued the cause for appellant (Resnick Law Group, PC, attorneys; Gerald Jay Resnick, on the briefs).

Tricia B. O'Reilly argued the cause for respondents (Walsh Pizzi O'Reilly Falanga, LLP, attorneys; Tricia B. O'Reilly, M. Trevor Lyons and Kristin Spallanzani, on the brief).

PER CURIAM

Plaintiff appeals from an order entered by the Law Division on September 29, 2017, which granted summary judgment in favor of defendants and dismissed plaintiff's complaint with prejudice. We affirm.

I.

In 1993, plaintiff began his employment with the University of Medicine and Dentistry of New Jersey (UMDNJ or the University) as a clinical dentist. He later held various positions at UMDNJ. In 2007, plaintiff was appointed Director of the Office of Faculty Practice (FP), a private dental practice operated by Rutgers School of Dental Medicine (RSDM), and in 2013, plaintiff was appointed Senior Associate Dean in Clinical Affairs, an administrative position. In those capacities, plaintiff reported to Cecile A. Feldman, DMD, MBA, the Dean of RSDM.

On May 20, 2014, plaintiff met with W.P.D., an employee at FP, regarding allegations by R.A., another FP employee, that W.P.D. assisted students in cheating and stealing University property.[1] Plaintiff offered W.P.D. the opportunity to resign to save his pension. W.P.D. rejected this offer. W.P.D.'s representative suggested that W.P.D. file a formal complaint.

On May 27, 2014, W.P.D. filed a discrimination and harassment complaint with the Rutgers Office of Employment Equity (OEE). The complaint charged R.A. with making disparaging comments to him based on his sexual orientation. The complaint included allegations that plaintiff made similarly inappropriate comments.

In April 2014, plaintiff was informed that S.W., an employee at FP, lied about her work history on her employment application. On June 9, 2014, S.W. sent a letter to Feldman alleging that plaintiff acted inappropriately during a meeting to discuss this allegation, and on June 17, 2014, S.W. filed a discrimination and harassment complaint against plaintiff and another individual.

On that same day, Feldman called plaintiff while he was on a business trip out of state. Feldman told plaintiff he was being replaced as Director of FP.

---

[1] We use initials to identify certain individuals to protect their privacy.

A-0871-17T1

Feldman made this decision after consulting with Lisa Grosskreutz, Director of the OEE, and Andrea West, Chief Operating Officer of RSDM. Feldman based her decision on a RSDM policy of removing supervisors when complaints of discrimination and harassment are submitted. Feldman memorialized her conversation with plaintiff in an email sent to plaintiff that day.

The next day, Feldman sent an email to members of FP stating, "Effective immediately, Dr. August Pellegrini will assume the directorship of [FP]. In addition, Mrs. Leilani Otuafi will assume the program administrator position. Ongoing, all business related matters should be directed to Dr. Pellegrini and Ms. Otuafi until further notice."

At her deposition, Feldman testified that she sent the email to "all individuals who are associated with the [FP]." This included individuals who treated patients either at FP or at University Hospital. Two days later, Pellegrini sent an email to members of the FP stating that the OEE was conducting an investigation of events that allegedly occurred at FP and that the investigation was confidential.

When he was deposed, plaintiff testified that on the first Monday after he returned from his business trip, three individuals asked him about his removal. Plaintiff stated "that word spread like wildfire through the dental school."

A-0871-17T1

On June 23, 2014, Grosskreutz sent plaintiff an email notifying him of S.W.'s complaint. Plaintiff was allowed to respond. In his response, plaintiff stated that he had "never discriminated against nor ha[d he] ever harassed [S.W.]" He also stated that S.W.'s letter "was filled with inflammatory misleading statements, which [had been] taken out of context with the actual events."

On July 7, 2014, W.P.D. amended his complaint and named plaintiff as a respondent. Plaintiff was provided with the amended complaint and permitted to respond. In his response, plaintiff asserted that he "never discriminated against [or] . . . ever harassed [W.P.D.]" He stated that W.P.D.'s "complaint [was] filled with exaggerations, mistruths, [and] misleading statements which are taken out of context with the actual events, and in some cases [are] direct lies."

In October 2014, Grosskreutz provided plaintiff with a copy of the investigation reports regarding W.P.D. and S.W.'s complaints, which were prepared by Jennifer Hellstern, the Associate Director of the OEE. Hellstern had interviewed various individuals including plaintiff, and considered plaintiff's written responses to the complaints. Hellstern found that plaintiff

5

violated UMDNJ's policy prohibiting discrimination and harassment with regard to W.P.D., but found no such violation regarding S.W.

Plaintiff was permitted to respond to the reports. Plaintiff provided Grosskreutz a written response to the report about W.P.D.'s complaint. He asserted that W.P.D. had filed the complaint in retaliation for their conversation regarding the allegation that W.P.D. assisted students in cheating and stealing University property. Plaintiff also claimed his statements were taken out of context, and he did not make any statements with prejudicial intent.

On October 21, 2014, Grosskreutz issued a preliminary report addressing W.P.D.'s complaint. She accepted Hellstern's finding that plaintiff violated the University's policy against discrimination and harassment with regard to W.P.D. Plaintiff was provided a copy of the report and allowed to respond. He did not do so. Thereafter, Feldman met with plaintiff to discuss W.P.D.'s complaint.

On November 25, 2014, Feldman sent plaintiff a letter in which she "concluded that the allegations made against [plaintiff were] credible . . . and that [his] conduct violated the University's [p]olicy [p]rohibiting [d]iscrimination and [h]arassment." Feldman stated that she intended to remove plaintiff from his position as Director of FP. She also intended to remove plaintiff from his position as Senior Associate Dean for Clinical Affairs at

RSDM and reduce his salary. Feldman advised plaintiff, however, he could remain as Senior Associate Dean if he engaged an executive management coach.

Feldman provided plaintiff with another opportunity to submit information regarding the complaint. Plaintiff asked Feldman to reconsider her decision and he sent her a lengthy response in which he detailed thirty-seven concerns he had with the investigation. Feldman responded on December 30, 2014. She stated that she was out of the office and any final action would be deferred until January 2015. Feldman met with plaintiff on January 9, 2015. She reaffirmed her decision to remove plaintiff from his position as Director of FP; however, she decided that plaintiff could remain as Senior Associate Dean, and his salary would not be reduced.

After he was removed from his position as Director of FP, plaintiff had ongoing issues with Pellegrini at FP. Plaintiff claimed he was not receiving a full calendar of patients. As a result, plaintiff resigned from FP. Plaintiff contends that his removal as Director of FP has ruined his reputation, since he now has to indicate on his curriculum vitae (CV) and inform persons who ask that he was removed as Director.

On September 8, 2015, plaintiff filed a complaint in the trial court against UMDNJ, Feldman, Grosskreutz, Hellstern, and West. Plaintiff alleged

defendants deprived him of his liberty interest in protecting his good name and reputation, in violation of Article 1, Paragraph 1 of the New Jersey Constitution. Plaintiff claimed he was removed from his position as Director of FP without "even being apprised of the particulars of . . . complaint[s] filed against him[.]"

Defendants filed a motion to dismiss the complaint pursuant to Rule 4:6-2(e), for failure to state a claim upon which relief can be granted. The trial court denied the motion. Following discovery, defendants filed a motion for summary judgment. After hearing oral argument by counsel, the judge granted the motion and entered an order memorializing her decision.

The judge found that plaintiff had failed to establish that he had a constitutionally-protected liberty interest because there was no evidence defendants had publicly disseminated any damaging information about him. The judge further found that even if plaintiff was entitled to due process with regard to his removal from the position as Director of FP, he had been provided with all of the process due. In addition, the judge determined that plaintiff had not presented sufficient evidence to impose liability upon the individual defendants.

The judge filed an order dated September 29, 2017, granting summary judgment in favor of defendants and dismissed the complaint with prejudice. This appeal followed.

II.

On appeal, plaintiff argues he presented sufficient evidence to support a claim under Article 1, Paragraph 1 of the New Jersey Constitution for the denial of procedural due process. He therefore argues the trial court erred by granting defendants' motion for summary judgment.

When reviewing an order granting a motion for summary judgment, we apply the same standard that the trial court applies in ruling on the motion. Lee v. Brown, 232 N.J. 114, 126 (2018) (citing Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 366 (2016); Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016)); Templo Fuente De Vida Corp. v. Nat'l. Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (citing Mem'l Props., LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 524 (2012)). Therefore, we must determine whether the evidence before the trial court shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. R. 4:46-2(c); see also Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995).

A-0871-17T1

Here, plaintiff alleges that he has a liberty interest in his good name and reputation, which is protected from deprivation without due process under the New Jersey Constitution. He claims W.J.D. and S.W. falsely asserted claims of unlawful discrimination and harassment against him, and the OEE's investigation did not afford him due process in addressing those allegations.

The Fourteenth Amendment to the United States Constitution provides that a state shall not "deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1. The United States Supreme Court has held that under the United States Constitution, an individual may have a protected liberty interest in his or her good name or reputation, and a state government may not deprive the individual of that interest without due process. See, e.g., Wisconsin v. Constantineau, 400 U.S. 433, 437 (1971) ("Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.").

However, a claim of damage to a person's good name or reputation alone is insufficient to establish a protected liberty interest under the United States Constitution. See Paul v. Davis, 424 U.S. 693, 711-12 (1976). The claimant must satisfy the so-called "stigma-plus" test and, "[i]n the public employment

10

context, . . . [the test] has been applied to mean that when an employer 'creates and disseminates a false and defamatory impression about the employee in connection with his termination,' it deprives the employee of a protected liberty interest." Hill v. Borough of Kutztown, 455 F.3d 225, 236 (3d Cir. 2006) (quoting Codd v. Velger, 429 U.S. 624, 628 (1977)).

"To satisfy the 'stigma' prong of the test, [the plaintiff] must . . . allege[] that the purportedly stigmatizing statement(s) (1) were made publicly, and (2) were false." Ibid. (citations omitted); see also Bishop v. Wood, 426 U.S. 341, 348 (1976) ("Since the . . . communication was not made public, it cannot properly form the basis for a claim that [the plaintiff's] interest in his 'good name, reputation, honor, or integrity' was thereby impaired." (footnote omitted)). Furthermore, to satisfy the "plus" prong, there must "be an alteration or extinguishment of 'a right or status previously recognized by state law.'" Hill, 455 F.3d at 237 (quoting Paul, 424 U.S. at 711 (1976)).

"Article I, [P]aragraph 1 of the New Jersey Constitution does not enumerate the right to due process, but protects against injustice and, to that extent, protects 'values like those encompassed by the principle[] of due process.'" Doe v. Poritz, 142 N.J. 1, 99 (1995) (second alteration in original) (quoting Greenberg v. Kimmelman, 99 N.J. 552, 568 (1985)). Our Supreme

11

Court has held that under the New Jersey Constitution there are "protectable interests in both privacy and reputation." Id. at 104.

However, the analysis under the New Jersey Constitution "differs from that under the Federal Constitution" because our Supreme Court found a protected interest in reputation, without a showing of "tangible loss." Ibid. Therefore, to establish a claim under the New Jersey Constitution, a plaintiff does not have to demonstrate the "plus" factor to assert a cognizable liberty interest in his or her good name.

Nevertheless, to establish a protected liberty interest in reputation, the plaintiff must present proof of public dissemination of the alleged stigmatizing information. See id. at 106 (holding that individual has a protected liberty interest arising from community notification under Megan's Law of his status as a convicted sex offender); In re R.P., 333 N.J. Super. 105, 114-15 (App. Div. 2000) (finding a liberty interest where a state agency expressed concerns about a teacher's alleged improper conduct to the teacher's employer and to the child's parents, "with no restriction upon further dissemination"); In re East Park High School, 314 N.J. Super. 149, 162 (App. Div. 1998) (holding that there is a liberty interest where a state agency placed a substantiated claim of sexual abuse by a teacher on to the central registry, which was publicly accessible).

In this case, the trial court correctly determined that plaintiff did not have a protected liberty interest in his good name and reputation under the New Jersey Constitution. As noted, plaintiff presented evidence showing that Feldman and Pellegrini sent emails to certain individuals indicating plaintiff had been removed as Director of FP, and an investigation was being conducted of certain alleged events at FP

However, the dissemination of the fact that plaintiff was removed from his position as Director of FP, and that certain unspecified events at FP were the subject of an investigation is insufficient to establish that plaintiff had a protected liberty interest in his good name and reputation. See Doe, 142 N.J. at 106; In re L.R., 321 N.J. Super. 444, 460 (App. Div. 1999) (noting that "a liberty interest is [not] implicated anytime a governmental agency transmits information that may impugn a person's reputation"). The analysis is based in part on the extent to which the information is disseminated, and the potential impact on the individual's reputation. See, e.g., Doe, 142 N.J. at 106 (holding that a person classified under Megan's Law as a Tier Two and Three sex offender had a protected liberty interest in his reputation because his status was transmitted to the public); In re R.P., 333 N.J. Super. at 114-15.

Here, defendants did not disclose any stigmatizing information about plaintiff to persons associated with FP, or to the public generally. Feldman sent FP "providers" an email stating that "[e]ffective immediately, . . . Pellegrini will assume the directorship of [the FP]." The email did not disclose the reasons for plaintiff's removal. In addition, Pellegrini sent an email to FP "providers" and staff members advising them that the OEE was conducting an investigation "into events that allegedly occurred at the [FP]."

In the email, Pellegrini noted that the "the integrity of the investigation is paramount" and any discussion of the investigation would compromise its integrity. Pellegrini also stated that "the investigation [was] confidential in nature." Pellegrini did not identify the events being investigated. He did not indicate that plaintiff's actions were the subject of the investigation. When he was deposed, plaintiff was asked if he had any information that defendants informed anyone outside of the OEE's investigation about the facts or conclusions of the investigation. Plaintiff responded, "I do not."

Plaintiff argues that his reputation was harmed because he had to inform other persons that he was no longer Director of the FP, and he had to state on his CV and tell persons who asked that he no longer held that position. However, as the record shows, defendants did not publicly disseminate any stigmatizing

14

information about plaintiff, his removal from his position, or the investigation of the allegations against plaintiff.

Plaintiff further argues he is not required to establish publication to support his due process claim under the New Jersey Constitution. However, as stated previously, in Doe, our Supreme Court found that the "stigma-plus" test under federal law does not apply in determining whether an individual has a protected interest in his or her good name and reputation under New Jersey law. Doe, 142 N.J. at 104. The plaintiff need only show "stigma." Ibid.

The "stigma" part of the test, which requires publication, see Hill, 455 F.3d at 236, is unaffected. See In re R.P., 333 N.J. Super. at 114-15; In re East Park High School, 314 N.J. Super. at 162. In this case, plaintiff failed to present sufficient evidence to show publication of stigmatizing information.

In support of his argument that publication is not required to establish a claim under the New Jersey Constitution, plaintiff relies upon Shovlin v. University of Medicine & Dentistry of New Jersey, 50 F. Supp. 2d 297 (D.N.J. 1998). Plaintiff's reliance on Shovlin is misplaced. In that case, the plaintiff asserted a due process claim under the United States Constitution, not a claim under New Jersey's Constitution. Id. at 300. Furthermore, the federal district court in Shovlin noted that a due process claim under the New Jersey

Constitution does not require a showing of tangible loss to establish a protected liberty interest in reputation. Id. at 316-17. The court did not state that publication of stigmatizing information was not required to state a claim.

Plaintiff also relies upon Kadetsky v. Egg Harbor Township Board of Education, 82 F. Supp. 2d 327 (D.N.J. 2000). There, the plaintiff asserted a due process claim under the federal and state constitutions based on a deprivation of an alleged interest in reputation. Id. at 337-38. The federal district court stated that the plaintiff had presented sufficient evidence to assert a claim under the New Jersey Constitution. Id. at 338.

However, the plaintiff in Kadetsky presented evidence showing that the defendants had disseminated a letter to certain individuals indicating that the plaintiff had been accused of sexual misconduct with a student. Id. at 332-33. In this case, plaintiff failed to present sufficient evidence showing that defendants published information that damaged his reputation. Thus, plaintiff's reliance on Kadetsky is misplaced.

III.

Plaintiff further argues that he should have been afforded the opportunity for a trial-type hearing before a neutral third-party to address the complaints against him. He contends he should have been allowed to present witnesses and

16

cross-examine the individuals who made the allegations. Even if we assume plaintiff's removal from his position as Director of FP implicated a constitutionally-protected liberty interest in his reputation under New Jersey law, the procedures that defendants employed here in investigating the complaints provided plaintiff with all the process required.

"Due process is not a fixed concept . . . but a flexible one that depends on the particular circumstances. Fundamentally, due process requires an opportunity to be heard at a meaningful time and in a meaningful manner. The minimum requirements of due process . . . are notice, and the opportunity to be heard." Doe, 142 N.J. at 106 (citing Zinermon v. Burch, 494 U.S. 113, 127 (1990); Matthews v. Eldridge, 424 U.S. 319, 334 (1976); Nicoletta v. N. Jersey Dist. Water Supply Comm'n, 77 N.J. 145, 165 (1978)).

In deciding the process that is due, courts consider the private interests at stake, "the risk of an erroneous deprivation" of those interests, the probable value of any additional procedural safeguards, "and the fiscal and administrative burdens of such procedures." Ibid. (quoting Zinermon, 494 U.S. at 127).

In this case, plaintiff's interest relates to his removal from an at-will position as Director of FP, where defendants did not publicly disseminate any damaging information about the reasons for that action. Furthermore, plaintiff

17

was provided with notice of the allegations. He was afforded numerous opportunities to respond to those allegations, which substantially reduced any risk of an erroneous deprivation.

Plaintiff has not shown that additional procedural safeguards in the form of a trial-type hearing, with the attendant fiscal and administrative burdens, is warranted in these circumstances. In sum, even if we assume plaintiff established that he had a constitutionally-protected liberty interest in his reputation that would be affected by his removal from his position as Director of the FP, he was afforded all of the process due.

IV.

Plaintiff also argues that the trial court erred by granting summary judgment on the claims against the individual defendants. He contends the individual defendants each had a role in depriving him of his procedural due process. However, in discovery, plaintiff did not offer any proof indicating that Feldman, Hellstern, Grosskreutz, or West disseminated any information damaging to plaintiff's good name or reputation to any individual outside the complaint and investigation process. Therefore, the trial court did not err by granting summary judgment on the claims plaintiff asserted against the individual defendants.

18

We have considered plaintiff's other arguments and conclude they lack sufficient merit to warrant discussion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0871-17T1